SO ORDERED: September 15, 2011.



**Basil H. Lorch III**
**United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| ROBERT JAMES BLOK, JR. and | ) | CASE NO. 11-90753-BHL-7 |
| RAE JEANNA GODSEY, | ) | |
| | ) | |
| Debtors. | ) | |

**ORDER**

This matter came before the Court on the **Motion to Dismiss Pursuant to 11 U.S.C. 707** filed by the Creditor, The First Capital Bank of Kentucky ["the Bank"] on July 11, 2011. The Debtors filed a **Response to Motion to Dismiss** on August 24, 2011, together with the **Joint Affidavit of Robert James Blok, Jr. and Rae Jeanna Godsey**. The Court held a hearing on August 30, 2011, at which time the parties appeared and presented testimony and argument in support of their respective positions. The Court took the matter under advisement at the conclusion of the hearing. Having now considered the foregoing and being otherwise fully advised, the Court hereby **DENIES** the Motion to Dismiss for the reasons set forth hereinbelow.

Discussion

The Bank, in its Motion, alleges that relief is appropriate under either subsection (a) or (b) of section 707. Because it appears that the majority of the listed debt is primarily business debt, the Bank orally retracted its claim for relief under 707(b) at the hearing and is proceeding under section 707(a) only. That section allows dismissal only for "cause" and enumerates the following three examples: (1) unreasonable delay by the debtor that is prejudicial to creditors, (2) nonpayment of any fees or charges required under chapter 123 of title 28, and (3) failure of the debtor in a voluntary case to file the information required by paragraph (1) of § 521.

The above examples of cause are illustrative only so there is much room for disagreement as to what constitutes cause for dismissal under 707(a). This Court, for instance, previously held, in accord with the Eighth and Ninth Circuits, that bad faith does not constitute cause for dismissal under 707(a). *In re Pedigo*, 296 B.R. 485 (2003); *accord In re Padilla*, 222 F.3d 1184 (9th Cir. 2000); *Huckfeldt v. Huckfeldt (In re Huckfeldt)*, 39 F.3d 829 (8th Cir. 1994). On appeal, the district court disagreed and held, in accordance with the Third and Sixth Circuits and a majority of lower courts, that bad faith "may" constitute cause for dismissal under section 707(a). *U.S. Trustee v. Pedigo*, 329 B.R. 47 (S.D. Ind. 2005); *accord In re Tamecki*, 229 F.3d 205 (3rd Cir. 2000); *Indus. Ins. Servs. v. Zick (In re Zick)*, 931 F.2d 1124 (6th Cir. 1991). The Bank relies heavily upon the *Pedigo* case and the case of *In re Rahim*, 442 B.R. 578 (Bankr. E.D. Mich. 2010), *aff'd*, 449 B.R. 527 (E.D. Mich. May 23, 2011) as support for its Motion.

In the latter case, the bankruptcy court found that the "debtors' continued lavish lifestyle, lack of effort to reduce expenses, ability to pay, and failure to make any payments toward their debts constituted bad faith." *Id.* at 529. In affirming the bankruptcy court, the district court approved the

2

lower court's reliance on *Zick*, noting that the dismissal was based upon a totality of the circumstances and not "solely" based on the debtors' ability to pay:

> Dismissal based on lack of good faith must be undertaken on an *ad hoc* basis. It should be confined carefully and is generally utilized only in those egregious cases that entail concealed or misrepresented assets and/or sources of income, and excessive and continued expenditures, lavish lifestyle, *and* intention to avoid a large single debt based on conduct akin to fraud, misconduct, or gross negligence.

449 B.R. at 527 (quoting *Zick*, 931 F.2d at 1128).

In this case, the only factor which the Bank relies upon as evidence of bad faith is the Debtors' substantial income. Specifically, the Bank cites the Debtors' "failure to make lifestyle adjustments" and "lavish expenses" as evidence of bad faith. In response, the Debtors point out that they struggled for nearly three years after their respective medical practices failed to pay personally guaranteed business debt before filing for relief. According to Blok's testimony at trial, part of the reason that his practice failed is that his Army Reserve unit was activated and deployed 21 days after he opened his doors for business.[1] Futhermore, there is no evidence that these Debtors lead an extravagant lifestyle. An appraisal dated March 8, 2011, indicates a fair market value of $67,125 for all of their personal property, including their primary automobiles, a 2002 Ford Excursion and a 1999 Ford Expedition, each with over 200,000 miles. Finally, in addition to providing support for a college-age child, the Debtors incur significant expense caring for their special needs minor child.[2]

---

[1] Blok subsequently developed a heart condition which necessitated his retirement from the Army Reserves and restricts the types of surgery he can perform. As a result, Blok is unable to perform the more intricate, and thus more lucrative, surgeries.

[2] The monthly educational expense for the Debtors' two children is approximately $2000 according to the Debtors' Amended Schedule J. Godsey testified that their younger child is, based upon medical advice, enrolled in a special-needs school located some distance from their home.

While courts may disagree on whether ability to pay is a relevant consideration under 707(a), the vast majority of courts agree that ability to repay, standing alone, is not enough to establish bad faith. *In re Falch*, 450 B.R. 88 (Bankr. E.D. Pa. 2011) (court's finding of bad faith may not be based exclusively or primarily on debtor's substantial financial means); *In re Mohr*, 425 B.R. 457 (Bankr. S.D. Ohio 2010) (ability to pay is a factor to consider but does not support dismissal under 707(a) without other indicia of bad faith or evidence of egregious conduct); *In re Woodburn*, 2008 WL 2777352 (Bankr. E.D.N.C.) (debtor's lack of good faith must be based upon the totality of the facts and circumstances); *accord, McDow v. Smith (In re Smith)*, 295 B.R. 69 (E.D. Va. 2003)*; In re O'Brien*, 328 B.R. 669 (Bankr. W.D.N.Y. 2005); *In re Keobapha*, 279 B.R. 49 (Bankr. D. Conn. 2002).

Likewise, the Third Circuit has held that a reviewing court may consider a debtor's substantial income and expenses, together with any other factors relevant to a debtor's good faith in filing bankruptcy. *Perlin v. Hitachi Capital America Corp.*, 497 F.3d 364 (2007). In that case, Perlin was a radiologist, working part-time, and earning approximately $370,000 per year. He and his wife owned two Lexus automobiles and spent $5,000 per month in private school tuition. They also had more than $430,000 in retirement savings. Perlin's medical practice had entered into a lease agreement with Hitachi for medical equipment and had executed a personal guarantee for the business obligations under the lease. When the business defaulted under the lease, Hitachi filed suit against the business and the Perlins, which prompted the bankruptcy filing.

Hitachi initiated a motion to dismiss under 707(a) alleging that the Perlins had filed the petition in bad faith. After a hearing, the Court was unmoved by Hitachi's allegations that the timing of the filing was manipulated to frustrate collection, that there was no good faith effort to repay, and

4

that the schedules and expenses were inaccurate. And with regard to the debtors' substantial income and expenses, the court emphasized that those factors alone cannot support a finding of bad faith. "As stated by one court, '[i]t is difficult to contemplate how Congress could more emphatically have stated that the debtor's net worth or future prospects is not 'cause' as the word is used in Section 707 for dismissal.'" *Id.* at 372 (citing *In re Goulding,* 79 B.R. 874, 876 (Bankr.W.D.Mo. 1987)). Instead, dismissal should be utilized only in "egregious cases that entail concealed or misrepresented assets and/or sources of income, lavish lifestyles, and intention to avoid a large single debt based upon conduct akin to fraud, misconduct or gross negligence." *Id.* at 374 (citation omitted). The court, finding that the debtors were "straightforward in their schedules" and "forthcoming with the Court and their creditors" found no other evidence of misconduct. Left with only the debtors' substantial income and comfortable lifestyle, the court concluded that it was "not the kind of 'egregious case' which warrants dismissal for lack of good faith under § 707(a)." *Id.* at 375.

The totality of the circumstances in this case reveals no indicia of bad faith apart from the Debtors' perceived ability to repay. These Debtors qualify for relief under chapter 7 despite their substantial income. If Congress drafted the statute so as to provide relief for high-income debtors, then surely income alone cannot support a charge of bad faith. As other courts have noted, debtors merely taking advantage of their legal rights is not, by itself, sufficient to support a finding of bad faith. *See, e.g., In re Turner*, 574 F.3d 349 (7th Cir. 2009) (not bad faith to seek to advance one's economic interests by making a claim based on a defensible view of one's legal rights); *In re James Wilson Assocs.*, 965 F.2d 160, 170 (7th Cir. 1992) ("It is not bad faith to seek to gain an advantage from declaring bankruptcy–why else would one declare it?"); *In re Bingham*, 68 B.R. 933 (Bankr. M.D. Pa. 1987) (filing on eve of effective date of amendment rendering debt nondischargeable is not

5

bad faith).

In accordance with all the foregoing, this Court finds that this is not the kind of "egregious case" which warrants dismissal under section 707(a). The Plaintiff's **Motion to Dismiss Pursuant to 11 U.S.C. 707** is, therefore, **DENIED**.

###